DAVID MCGUIRE, for the use of James Noe, *v.* GEORGE ASBRIDGE.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. *J. C. Clarke*, for the appellant.

*Bartlette*, curator of defendants' vacant succession, *contrâ*.

SIMON, J. The plaintiff is appellant from a judgment which rejects a claim by him set up against the defendant for the sum of five hundred and fifty dollars, being the amount of three months' wages as pilot on board the steamboat Pioneer, during her voyage to and up the Sabine river, and thence to Galveston, Texas, from the 2d of January, to the 2d of April, 1843.

The defendant, sued as owner of the said steamboat, first pleaded an exception, which was subsequently withdrawn, and afterwards filed an answer, in which, after pleading the general issue, he alleged that the plaintiff was incompetent as a pilot, and had injured him to the amount of $500.

The right of the plaintiff to recover depending mainly upon his capacity or competency to fulfill the duties of pilot for the purposes for which he was employed, the question here presented is one merely of fact, and our only enquiry is whether the judge *a quo* erred in finding that, from the evidence, the plaintiff is not entitled to recover?

It appears that, in the beginning of January, 1843, the defendant was induced to send his boat round to the Sabine, in consequence of the representations made by the plaintiff to the captain, that he was well acquainted with the navigation of said river, that the Pioneer was well suited to that trade, and on the recommendation of one Shannon. The boat commenced her trip in the middle of January, with the plaintiff as pilot on board, and with a sea pilot, and reached the Sabine lake on the 27th of the

same month. The evidence shows that there are three passes · from the lake into the river, to wit, the *eastern, middle,* and *western* pass. The plaintiff had told the captain in New Orleans, that he knew the channel as well as any man living; that *if he could not bring the boat over the bar, no man could do it;* and when there, plaintiff mistook the right and proper pass, and attempted to enter the middle one, which was the cause of the boat's grounding and remaining there several days. The captain was informed afterwards that the western pass had deep water; and as he had then some words with the plaintiff for bringing the boat to a place he did not know, the latter answered that *he did not want any thing,* and *that all he wanted was to get home.* In the mean time, on the 3d of February, the boat went through the western pass with less water in the lake than on the day of its arrival. She went up the Sabine; was much detained for cargo; returned with 279 bales of cotton to Sabine city about the middle of March; and from divers circumstances, detailed by the evidence, the boat was taken round to Galveston, where she was libelled by the crew and by the plaintiff; and, under the pretence that she was in danger of perishing by worms, and to save expense, she was sold, and became a total loss to the defendant.

We have attentively examined the testimony, and we are not prepared to say that it is insufficient to support the defence. It shows that, although the plaintiff is well able to manage a boat, he was entirely incompetent to act as a pilot on the Sabine river; that the trip was undertaken principally upon his representations that the boat was a proper one for that trade, and that he was well acquainted with that navigation, and competent to conduct the boat on the enterprise; but those representations appear to be contradicted by the evidence, and it is proved satisfactorily that he had not a sufficient knowledge of the localities to take the boat into the Sabine. We think he was the principal cause of the defendant's misfortune, and we concur with the judge *a quo* in the opinion, that the latter has already suffered too much in the loss of his property, to be subjected to paying an unjust demand.

*Judgment affirmed.*